IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

THOMPSON BUILDING WRECKING    *
COMPANY, INC., CSRA TESTING    *
& ENGINEERING CO., P.C.,    *
QZO, INC., D/B/A ARTISTIC    *
DESIGN & PROMOTIONS, and    *
ASSOCIATION FOR FAIR    *
GOVERNMENT,    *
   *
      Plaintiffs,    *
   *      CV 108-019
      v.    *
   *
AUGUSTA, GEORGIA and    *
GERALDINE A. SAMS, in her    *
individual capacity,    *
   *
      Defendants.    *

---

**O R D E R**

---

The captioned case is before the Court on the parties'
cross motions for summary judgment. (Doc. nos. 133 & 134.) Both
parties have responded and replied to each motion. "The bases
for these motions, which are varied, sometimes complex, and
often overlapping and redundant, are more fully detailed later
herein."[1] Upon consideration of counsel's arguments, the record

---

[1]    Three Rivers Cablevision, Inc. v. City of Pittsburgh, 502 F. Supp.
1118, 1120 (W.D. Pa. 1980) (considering subject matter and motions similar to
that of this lawsuit).

evidence, and the relevant law, Defendant's Motion for Summary Judgment (doc. no. 133) is **GRANTED** and Plaintiff's Motion for Summary Judgment (doc. no. 134) is **DENIED**.

The City should not interpret this decision as endorsing the quality of its procurement operations. In fact, the record in this case suggests otherwise. The Court empathizes with the Plaintiffs' understandable frustration with the City's poor administration of the procurement process. However, the Court will not, in the words of the Supreme Court, "constitutionalize"[2] these disappointed bidder disputes when the law does not allow such action.

## I. Background

### A. Procedural History

Plaintiffs, three Augusta, Georgia, area businesses (Business Plaintiffs) and a community group consisting of various individuals (Association for Fair Government or AFG), filed a complaint alleging that actions taken by the City of Augusta[3] (City) and its Procurement Director, Geraldine Sams (Sams), in connection with the award of various city contracts violated Plaintiffs' federal equal protection and due process

---

[2]     Engquist v. Oregon Dept. of Agric., 553 U.S. 591, 128 S. Ct. 2146, 2157 (2008) (quoting Connick v. Myers, 461 U.S. 138, 154, 103 S. Ct. 1684, 1694 (1983)).

[3]     Augusta, Georgia is a political subdivision of the State of Georgia.

rights, as well as other claims for relief, including those arising from state law.

The City answered and later moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), which was granted in part and denied in part.[4] (Order of May 30, 2008, Doc. no 33.) Specifically, Plaintiffs' Georgia Constitutional claims were dismissed because they raise novel issues of Georgia law. The claims against Defendant Sams in her official capacity were dismissed as unnecessary based upon Eleventh Circuit authority establishing that local governmental units may be sued directly. Plaintiffs' remaining claims were not dismissed, but were to be considered anew after an amended complaint was filed.

Plaintiffs filed their First Amended Complaint alleging claims for violations of federal equal protection and due process rights compensable under 42 U.S.C. §§ 1981 and 1983, fraud and misrepresentation under Georgia law, violation of the Augusta Code, and negligence and willful misconduct under Georgia law.[5] (Doc. no. 37.) Plaintiffs also request that the Court enter a declaratory judgment, and award costs, attorney's

[4] Until August 2009, upon consent of the parties, this case was assigned to the Honorable W. Leon Barfield, United States Magistrate Judge. See 28 U.S.C. § 636(c). Because this case raises issues similar to those addressed by this Court in an Order regarding a motion for preliminary injunction in another case, in the interests of justice and judicial economy, this case was reassigned to this Court by the Honorable William T. Moore, Jr., Chief United States District Judge. (Doc. no. 155.)

[5] The amended complaint again alleges claims under the Georgia Constitution. These claims were dismissed on motion for judgment on the pleadings, and are not considered here. (See Order of May 30, 2008 at 5-6.)

fees and punitive damages. (Id.) Defendants answered the amended complaint within which they assert various affirmative defenses. (Doc. no. 44.) The parties have since proceeded through discovery, and now before the Court are the parties' cross motions for summary judgment.

### B. Factual Background

The facts of this case center on a series of transactions between the City and the Business Plaintiffs concerning the award of City contracts pursuant to one of three City-administered processes. The three relevant processes include the following: Requests for Proposals (RFPs), Requests for Qualifications (RFQs), and Invitations to Bid (ITBs). The Business Plaintiffs, Thompson Building Wrecking Company, Inc. (Thompson), CSRA Testing & Engineering Company, P.C. (CSRA), and QZO, Inc., doing business as Artistic Design & Promotions (Artistic), each placed bids on or responded to the City's various RFPs, RFQs, or ITBs, but were unsuccessful in obtaining contracts. The Business Plaintiffs are therefore so-called "disappointed bidders." The specific facts of each transaction are set forth below. The Business Plaintiffs seek monetary damages arising out of the transactions to compensate them for their alleged constitutional deprivations.

Plaintiffs also seek a declaration that two provisions of the Augusta Code are unconstitutional. The provisions are, first, § 1-10-43(b) (the Materiality Provision), that states:

> [a]ll specific requirements contained in the invitation to bid including, but not limited to, the number of copies needed, the timing of the submission, the required financial data, and any other requirements designated by the Procurement Department are considered material conditions of the bid which are not waiveable or modifiable by the Procurement Director. All requests to waive or modify any such material condition shall be submitted through the Procurement Director to the appropriate committee of the Augusta-Richmond County Commission for approval by the Augusta-Richmond County Commission.

And, second, § 1-1-0-67(b) (the Bid Protest Provision), providing:

> A protest with respect to an invitation for bids or request for proposals shall be submitted in writing prior to the opening of bids or the closing date of proposals. If not done by that time, the complaint or protest is lost.

### 1. Thompson's Bid on ITB 06-141

The City broadcasted ITB 06-141 requesting bids for a contract to engage in demolition of buildings on the judicial center site in Augusta, Georgia on May 25, 2006. (Def. Mot. Summ. J., Ex. 5, Doc. no. 134-6 at 56.) Plaintiff Thompson submitted a bid for the project in the amount of $144,400.00, but was not awarded the contract. (H. Thompson Dep. at 44-45, Ex. 2.) Reliable Demolition and Construction, Inc. (Reliable)

was awarded the contract based on its bid of $125,060.00. (Id.) It is undisputed that the bid specifications within ITB 06-141 indicate that the contract will be awarded to the bidder who offers the lowest net price per parcel. (H. Thompson Dep. at 40; Pl.'s Resp. to Def.'s U.F. ¶ 50.)

Here, Reliable had the lowest bid. Thompson does not dispute that it was not the lowest bidder, but claims it was the lowest "responsive" bidder. (Def.'s Resp. to Pl.'s U.F. ¶ 51.) Thompson alleges Reliable's bid should have been deemed non-compliant because Reliable falsely certified on a bid document that it was a disadvantaged business enterprise (DBE). (See Id., Ex. 3.) Yet, Reliable's document does not represent that it is a DBE registered with the City.

Thompson also complains that Reliable did not, as required by the Augusta Code, maintain a construction bond throughout the demolition project. (Compl. ¶¶ 14-20.) At one point during the performance of the judicial center site work, Reliable lost its performance and payment bond. Thompson's owner, Hiram Thompson, testified that his company should therefore have been awarded the remainder of the project. At the time Reliable's bond was revoked, less than $40,000 worth of construction services remained on the project. (See Thompson Dep., Ex. 5.) Under the Augusta Code, payment and performance bonds are only required

for contracts for construction services in excess of $40,000. See § 1-10-38.

Thompson further alleges, in its motion for summary judgment, that Reliable failed to list a "state license number" on a bid form, and failed to fill out another required form, Attachment B for its subcontractor on the job, within its submission for ITB 06-141.[6] (Pl.'s U.F. ¶ 19; Def.'s Res. to Pl.'s U.F. ¶ 19.) Finally, Thompson claims that the decision to award the contract to Reliable, a minority-owned company, was based upon race. (Compl. ¶¶ 51-59.)

## 2. CSRA's Response to RFQ 07-102

The City broadcasted RFQ 07-102 on February 17, 2007, seeking soils and material testing services at Highland Avenue Water Treatment Plant. (See James Pope Dep., Def.'s Ex. 1.) The RFQ required that applicants submit one original and seven copies of response materials. (Id. at 4.) Plaintiff CSRA, a

---

[6] Defendants urge this Court to ignore these factual allegations because they were not contained in Plaintiffs' First Amended Complaint, but were first raised in Plaintiffs' Motion for Summary Judgment. Defendants cite Federal Rules of Civil Procedure 15 and 16, Local Rule 6.1, and Gilmour v. Gates, McDonald and Co., 382 F.3d 1312 (11th Cir. 2004), as authority establishing the proper method for amending a complaint, and argue Plaintiffs have not done so.

While it is true that the Court may, under its Local Rules, grant an extension of time to amend a pleading under the Federal Rules of Civil Procedure, such a procedure is not needed here. Were Plaintiffs to assert new claims in response to Defendants' motion for summary judgment, Gilmour would potentially block such additional claims. However, that is not the case here where Plaintiffs are raising additional facts learned in discovery. In any event, as discussed below, the Court is not persuaded to find in favor of Plaintiffs based upon their allegations of Reliable's non-compliance, so the issue is moot.

company that has worked with the City for over thirty years on City contracts, submitted a response to the RFQ. CSRA was not awarded the contract because the City determined that CSRA did not include the correct number of copies.

The City informed CSRA of its non-compliance through a letter to CSRA's President, James "Jim" Pope. (See James Pope Dep., Pl.'s Ex. 1.) Nevertheless, Pope testified that the City "acted inappropriately" and "that [he] should have been given an opportunity to submit [an] additional copy." (Jim Pope Dep. at 26.) Upon receiving the letter, Pope "filed" it by placing it in his drawer, and neither he, nor anyone else at CSRA, took further action. (Id. at 19.) Pope also maintains that, "to the best of [his] ability, [he] submitted one original and seven copies" in his company's response to the RFQ. (Id. at 16-17.)

The City awarded the RFQ to MC Squared, Inc., another engineering firm, and a minority owned business. The City determined that MC Squared submitted the correct number of copies. MC Squared outscored the other candidates for RFQ 07-102 on each of the City evaluator's Evaluation Sheets; specifically, MC Squared's point totals exceeded the scores of other companies that submitted proposals in the following areas: experience with similar projects, company accreditations, laboratory testing experience, field testing experience, proximity of the company's office to the project, and cost. (See Goins Dep., Pl.'s Ex. 2.)

### 3. CSRA's Response to RFQ 07-196

Plaintiff CSRA was also involved in the City's RFQ for Soils and Material testing for the J.B. Messerly Water Pollution Control Plant (WPCP) for Augusta Utilities, which was broadcasted on October 18, 2007. RFQ 07-196 required that applicants submit immigration forms with their application materials, pursuant to O.C.G.A. § 13-10-91, Georgia Security and Immigration Compliance Act.[7] (See James Pope Dep., Pl.'s Ex. 2 at 15.) The RFQ expressly stated that those applicants that did not return the forms would be deemed non-compliant. (See Id. at 13.) CSRA's application did not include the required forms and was rejected as non-compliant.

James Pope did not include the immigration forms because of his belief that "it did not make any sense." (James Pope Dep. at 38.) Pope thought the immigration forms were misplaced in the RFQ because they referenced the signatory contracting with the Georgia Department of Natural Resources (DNR).[8] (Id.) Pope claims to have attempted to contact the City regarding the immigration forms, but, by the time Pope attempted to contact the City, the time for grievances had passed. Pope, however, admits he saw the

---

[7] For a discussion of the legislative history and purpose of The Georgia Security and Immigration Compliance Act, see Valerie Barney, Katherine Field & Nicole Hair, *Peach Sheet: Professions and Business*, 23 GA. ST. U. L. REV. 247 (2006).

[8] It turns out that the City had included a form affidavit based on the Georgia Department of Natural Resources' form. When the mistake was discovered, the City substituted its name for the Department of Natural Resources.

required forms prior to the application deadline. He also admits that by not turning in the required forms, his company was noncompliant.

The City awarded the RFQ to MC Squared, the only other applicant to the RFQ. MC Squared certified in its response to RFQ 07-102 that it was a local vendor. (See Pl.'s Mot. to Amend, Ex. A, doc. no. 50.) Plaintiffs claim MC Squared should have been deemed noncompliant in its response to RFQ 07-102 because MC Squared's local vendor certification was false. Nevertheless, the award of RFQ 07-102 to MC Squared was not based on the local vendor certification. (Mills Aff. ¶¶ 13-14, Doc. no. 55, Ex. B.) Rather, the record reflects that the award was based in part on MC Squared's qualifications and successful work on the Highland Avenue Site, which was related to RFQ 07-102. (Saxon Dep. at 22-24.)

### 4. Artistic Bid on ITB 07-120

On March 15, 2007, the city issued ITB 07-120 for a City contract to provide work uniforms for the Augusta Fire Department. The ITB called for an initial round of open bidding and a subsequent round for the best bidders, who were invited to submit samples of various uniform items for the bid committee's evaluation. The ITB further provided that "[a]ll clothing submitted must meet or exceed the specifications within this bid

package." (See Studdard Dep. at 35, Ex. A at 2.) Two companies made it to the final round, Plaintiff Artistic and Command Uniforms by John, Inc. (Command).

The evaluation committee for ITB 07-120 tabulated a side-by-side comparison of each item submitted by the two companies. (See Stille Dep., Ex. F.) Every item submitted by Command met specifications called for by the ITB. Many items submitted by Artistic did not. For example, the color and collars of several uniform items submitted by Artistic did not meet specifications. (Id. at 1.) Artistic's former employee, Robert Studdard, who prepared the bid documents, testified that he personally determined that, in his opinion, some of the items did not meet the ITB's specifications. (Studdard Dep. at 50-55.)

Further, Command's bid price was determined to be lower than Artistic's, a fact confirmed by Robert Studdard. (See Stille Dep., Ex. F at 2, Ex. K at 1-2; Studdard Dep. at 62-64.) Thus, Command, the lowest bidder, was awarded the contract in ITB 07-120. Artistic unsuccessfully protested the bid award. (See Stille Dep. at 53-55, Ex. C.)

### 5. Artistic Bid on ITB 08-029

The final government contract at issue in this suit, ITB 08-029, was broadcasted on September 20, 2007, for a series of six City contracts to provide various uniforms and accessories

for the Richmond County Sheriff's Office. Section A was a contract to supply men's and women's uniforms, Section B was a contract to supply battle dress uniforms (BDUs) and bicycle shorts, Section C was a contract to supply uniform web gear, Section D was a contract to supply uniform jackets and jumpsuits, Section E was a contract to supply uniform accessories and leather gear, and Section F was a contract to supply motorcycle pants. (Studdard Dep., Ex. G at 56.)

Artistic submitted a bid to ITB 08-029 at a total cost of $211,781.95. (Id. at 55.) Upon the Richmond County Sheriff's recommendation, Artistic was awarded a contract to provide some, but not all, of the items called for in ITB 08-029. (Id. at 91, Ex. H.) Command was awarded some items as well. (Id.) Some sections of the ITB were not awarded to anyone. Artistic was not awarded certain items because of problems with their sample items' quality, its failure to offer the lowest price on particular items, and/or its non-compliance with bid specifications in certain instances. (See Studdard Dep., Ex. H.) Artistic unsuccessfully protested not being awarded all of the items.

## II. Failure to Join Indispensible Parties

Before addressing the merits of the motions for summary judgment, the Court takes up a threshold matter: an alleged

12

failure by Plaintiffs to join indispensible parties. The nonparties at issue here are the business entities successfully awarded the city contracts: Reliable, MC Squared, and Command. This issue is governed by Federal Rule of Civil Procedure 19.[9] See City of Marietta v. CSX Transp., Inc., 196 F.3d 1300, 1305 (11th Cir. 1999). Federal courts in the Eleventh Circuit follow a two-step process to determine whether a nonparty is indispensible. CSX Transp., Inc., 196 F.3d at 1305. First, the court must ask whether complete relief can be granted in the present procedural posture, or whether the nonparties' absence will impede a nonparty's interest or subject the current parties to a risk of inconsistent obligations. Id. If the answer is "yes" on any of these grounds, and the nonparties cannot be joined, then the court asks, as the second step, whether in equity and in good conscience the action should go forward. Id.

---

[9] Rule 19(a) provides:

(1) Required Party. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
    (A) in that person's absence, the court cannot accord complete relief among existing parties; or
    (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
        (i) as a practical matter impair or impede the person's ability to protect the interest; or
        (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.
(2) Joinder by Court Order. If a person has not been joined as required, the court must order that the person be made a party. A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff.
(3) Venue. If a joined party objects to venue and the joinder would make venue improper, the court must dismiss that party.

Defendants argue that without the joinder of Reliable, MC Squared, and Command, the City will be subject to a risk of inconsistent obligations by "paying twice for the same contract," should it be ordered to pay damages, attorney's fees, or bid preparation costs to Plaintiffs. (Def.'s Mem. of Law in Supp. of Mot. for Summ. J. at 14.) Further, Defendants allege the nonparties' economic interests in their awarded City contracts are subject to an improper risk without the nonparties joinder to the lawsuit.

In order for the Court to resolve this issue, it must bear in mind what remedies Plaintiffs seek and do not seek. In this case, Plaintiffs seek a declaration that portions of the Augusta Code are unconstitutional and an award of monetary damages (Prayer for Relief (b) & (d), doc. no. 37.) Plaintiffs do not seek to rescind the nonparties' City contracts and have them judicially awarded to Plaintiffs.

The Court notes that Defendants have cited Kimball v. Fla. Bar for the proposition that "in the absence of an indispensible party, the federal courts are no more empowered to render declaratory judgment than [they are] to give affirmative relief." 537 F.2d 1305, 1307 (5th Cir. 1976)[10]; (Def.'s Mem. of Law in Supp. of Mot. for Summ. J. at 12.) Kimball involved a

---

[10]    Fifth Circuit decisions handed down prior to October 1, 1981, are binding in the Eleventh Circuit. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981).

former Florida bar member's challenge to the constitutionality of his disbarment. The _Kimball_ court did not rely on the quoted proposition in reaching any holding in the case, however, as it did not determine whether nonparties, the Supreme Court of Florida or its members, were indispensible. Instead, it raised the issue of potential indispensible parties _sua sponte_ and made no holding.

The Court is aware of only one case quoting this language from _Kimball_, and it is from outside the Eleventh Circuit. In the case, _NLRB v. Doug Neal Mgmt. Co._, 620 F.2d 1133, 1139 (6th Cir. 1980), declaratory relief was not sought, and the court did not dismiss based on the failure to join a party because declaratory relief could not be granted. This Court, therefore, declines to dismiss this suit based on _Kimball_.

Further, neither a declaration that Augusta Code provisions regarding City contract procurement are unconstitutional nor an award of money damages compensating Plaintiffs for constitutional violations, attorney's fees, or bid preparation costs, would affect the nonparties identified by Defendants to an extent that would justify finding them "indispensible." The non-parties' economic interests in their awarded contracts are not at risk in this suit, since no rescission is sought.

Likewise, even if the city was ordered to pay money damages, attorney's fees, or bid preparation costs to the

Plaintiffs as compensation, it would not be subject to an "inconsistent obligation." Payment for the City contracts awarded to Reliable, MC Squared, and Command in the first instance was simply payment for the contract work. Compensating a disappointed bidder for violation of the bidder's constitutional rights is not the same as paying for the contract a second time. The compensation requested here is for an intangible injury allegedly inflicted by the city attendant to the procurement process. See Wright Farms Constr., Inc. v. Kreps, 444 F. Supp. 1023, 1028-29 (D. Vt. 1977) (holding failure to join grantees of public funds under a state statute in an action brought by disappointed bidders for prospective injunctive relief is not violative of Fed. R. Civ. P. 19).

Based on the foregoing, the suit will not be dismissed for failure to join the alleged indispensible parties.

### III. Summary Judgment Standard

Summary judgment is appropriate when there are no genuine issues of fact and the movant is entitled to summary judgment as a matter of law. See Fed. R. Civ. P. 56(c). The purpose of the summary judgment rule is to dispose of unsupported claims or defenses which, as a matter of law, raise no genuine issues of material fact suitable for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In considering a motion for summary

judgment, all facts and reasonable inferences are to be construed in favor of the non-moving party. Hogan v. Allstate Ins. Co., 361 F.3d 621, 625 (11th Cir. 2004). The party opposed to the summary judgment motion, however, "may not rest upon the mere allegations or denials in its pleadings. Rather, its responses . . . must set forth specific facts showing that there is a genuine issue for trial." Walker v. Darby, 911 F.2d 1573, 1576-77 (11th Cir. 1990). Summary judgment is not appropriate "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In response to the parties' motions for summary judgment, the Clerk issued a Griffith[11] notice on May 1, 2007. (Docs. no. 136 & 137.) The time for filing materials in opposition has expired, and the motions are ripe for consideration.

## IV. Liability Under § 1983

The crux of Plaintiffs' lawsuit is that the City of Augusta and Defendant Sams violated their constitutional rights of equal protection and due process guaranteed by the Fourteenth Amendment. Plaintiffs seek money damages for their alleged deprivations pursuant to 42 U.S.C. § 1983. Plaintiffs have

---

[11] Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam).

brought suit for municipal liability against the City, and Defendant Sams in her individual capacity. To establish municipal liability under § 1983, there must be a policy or custom behind the deprivation of a federal right. Kentucky v. Graham, 473 U.S. 159, 166 (1985). To establish liability under § 1983 against a public official in an individual capacity, "it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." Graham, 473 U.S. at 166.

## A. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution states that "[n]o state shall... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV, § 1. Plaintiffs claim their right to equal protection has been violated and that the violations are actionable under § 1983.[12] Plaintiffs argue their rights were violated under two theories: (1) reverse race discrimination and (2) inadequate training and/or supervision.

---

[12] Plaintiffs also allege violations of 42 U.S.C. § 1981. However, § 1983 provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is brought against state actors. See Vason v. City of Montgomery, Ala., 240 F.3d 905, 906 n.1 (11th Cir. 2001) (citing Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 735 (1989); Butts v. County of Volusia, 222 F.3d 891, 894 (11th Cir. 2000)). Here, Defendants are state actors. Thus, Plaintiffs may not bring causes of action against them directly under § 1981. See also Felton v. Polles, 315 F.3d 470, 481-83 (5th Cir. 2002), abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006).

## 1. Reverse Race Discrimination

Plaintiffs assert in Count I of their Amended Complaint (¶¶ 51-98, doc. no. 37) that Defendants committed reverse race discrimination by favoring companies owned by minorities in the award of City contracts. Plaintiffs allege Defendants did this through the discriminatory enforcement of the city's Materiality Provision, a facially neutral statute. Plaintiffs assert the race discrimination claim two ways. First, as a selective and/or discriminatory enforcement claim and, second, as a "class of one" claim.

### a. Selective and/or Discriminatory Enforcement

Equal protection claims based on the selective and/or discriminatory enforcement of a facially neutral statute are cognizable in the Eleventh Circuit. See E & T Realty v. Strickland, 830 F.2d 1107, 1109-10 (11th Cir. 1987). To succeed on such an equal protection claim, Plaintiffs must establish (1) that they were treated differently than similarly situated companies; and (2) Defendants unequally applied the facially neutral statute for the purpose of discriminating against the Plaintiffs. Strickland v. Alderman, 74 F.3d 260, 264 (11th Cir. 1996). Disparate treatment is not enough. Plaintiffs must show that the discrimination was intentional. Washington v. Davis, 426 U.S. 229, 241-42 (1976); E & T Realty, 830 F.2d at 1113.

This may be shown by circumstantial evidence, such as a stark pattern of adverse impact on a particular group. E & T Realty, 830 F.2d at 1113 n.9.

Plaintiffs' brief in support of their motion for summary judgment (doc. no. 133-21 at 12-19) and brief in support of their response to Defendants' motion for summary judgment (doc. no. 148 at 9) reveal that the reverse race discrimination claims are only being asserted on behalf of Plaintiffs Thompson and CSRA, in regard to ITB 06-141, RFQ 07-102, and ITB 07-196.

Plaintiffs argue that these three City contracts were improperly awarded upon the basis of race by selective and/or discriminatory enforcement of the Materiality Provision. In doing so, Plaintiffs simply state their version of the facts surrounding each of the three procurement proceedings, reference nine (9) other instances of City contract procurements, and, finally, conclude that the allegations establish a pattern of discrimination sufficient to state a prima facie claim for reverse race discrimination.[13] (Pl.'s Br. in Supp. of Mot. for Summ. J. at 12-22.)

---

[13]     The Court recognizes that Plaintiffs have also asserted a pattern of "political favoritism" in a conclusory fashion in their brief in support of their motion for summary judgment. (Doc. no. 133-20 at 22) (citing Corey Airport Servs. v. City of Atlanta, 632 F. Supp. 2d 1246, 1271-74 (N.D. Ga. 2008). However, nowhere in the remainder of Plaintiffs' papers in this voluminous record do they meaningfully pursue the political favoritism argument beyond labeling Command Uniforms by John, Inc., a successful bidder on ITB 07-120, a "political favorite." (Id. at 4; Compl. ¶ 36.) The disappointed bidder for ITB 07-120, Plaintiff Artistic, does not even raise an equal protection claim, but rather asserts claims under the due process

Here, Plaintiffs have not come forth with "credible evidence that the actions of the [Defendants] were motivated by racial animus or ill-will." Grillo v. N.Y. City Transit Auth., 291 F.3d 231, 234 (2d Cir. 2002) (citing Crowley v. Courville, 76 F.3d 47, 52-53 (2d Cir. 1996)). For instance, neither of the owners of Plaintiffs Thompson or CSRA testified that they were intentionally treated with malice or ill-will by the Defendants or that they were the victims of a personal attack by Defendant Sams in this case.

Moreover, Plaintiffs' references to other instances of alleged discriminatory acts by the Defendants fall short of establishing a stark pattern of racial discrimination. In only three of the nine other instances do Plaintiffs reference race (a portion of ITB 07-153, ITB 07-155, and RFP 07-209). Plaintiffs allege, in these instances, that a minority company ended up being awarded a City contract despite what Plaintiffs deem noncompliant portions of the companies' bid documents. Plaintiffs' remaining examples are of companies being awarded City contracts despite imperfections in their bid documents, without mention of race (a portion of ITB 07-153, RFQ 07-180, RFP 07-193, RFQ 08-051, RFP 08-064, RFP 06-143, RFP 07-134).

---

clause. These vague references to political favoritism are insufficient to create a triable issue of fact regarding the equal protection claims raised in this case.

As Defendants characterize it, the "sum total of Plaintiffs' evidence is a theoretical tally sheet of which contractors were awarded which contracts and an indication of their race []." (Def.'s Mem. of Law in Supp. of Mot. for Summ. J. at 16.) The reasonable inference that may be drawn from the evidence is that the City sometimes enforces the Materiality Provision and sometimes does not. Sometimes the enforcement favors minority owned companies, and sometimes it favors non-minority owned companies. In other words, at worst, the City is inconsistent in its application of the Materiality Provision, regardless of race. The record does not evidence purposeful race discrimination or enforcement based upon any other impermissible purpose.

Plaintiffs argue in the alternative that a pattern of race discrimination is not necessary to prevail on their equal protection claim. In support thereof, Plaintiffs cite Village of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 254 (1977), in which the Supreme Court stated that a court must look to other evidence in the absence of a stark pattern of discrimination.

Defendants have come forward showing a rational basis for each of its decisions in not awarding Plaintiffs Thompson and CSRA the City contracts they sought. Whether a rational basis exists is answered by identifying, first, whether there could be

a legitimate reason for the Defendants' actions in not awarding Plaintiffs Thompson and CSRA the City contracts, and, second, by identifying whether the acts are rationally related to the articulated purpose. See Ga. Manufactured Hous. Ass'n v. Spalding County, Ga., 148 F.3d 1304, 1307 (11th Cir. 1998) (relying on Haves v. City of Miami, 52 F.3d 918, 921-22 (11th Cir. 1995)). Thus, the Court asks whether there is a conceivable legitimate governmental purpose for the City's actions, not whether that purpose was actually considered by the City, and whether the City's challenged actions were rationally related to the purpose.

Here, the Defendants have articulated rational bases upon which they relied in not awarding Plaintiffs Thompson and CSRA the City contracts they sought. Thompson was not awarded the contract in ITB 06-141 because Thompson was not the lowest priced bidder. The legitimate governmental purpose is favoring the award of government contracts to the lowest-priced bidder in order to save public funds. Rejecting Thompson is rationally related to this purpose because they did not submit the lowest bid. CSRA was not deemed compliant for RFQ 07-102 because it did not provide the correct number of copies with its application. While this may appear to be a minimal violation, the Court acknowledges a legitimate governmental purpose in exhibiting efficient internal governmental operations. Deeming CSRA

noncompliant was rationally related to this purpose because it did not submit the required number of copies. Finally, in regard to RFQ 07-196, CSRA did not submit completed immigration forms with its response, and was deemed noncompliant for this reason. The legitimate governmental purpose is, again, exhibiting efficient internal governmental operations, and requiring applicants for City contracts to comply with state and federal immigration law. Deeming CSRA noncompliant was rationally related to these purposes because CSRA knew about the forms, but did not complete them, or attempt to resolve their confusion regarding the forms. The Court finds that these are not only conceivable legitimate government purposes, but are in fact legitimate government purposes, and that the City's challenged actions are rationally related to them. Defendants motion for summary judgment as to the discriminatory and/or selective enforcement equal protection claim is **GRANTED**.

### b. "Class of One" Claim

Plaintiffs also state in their motion for summary judgment that equal protection claims can be asserted by a class of one. (Pl.'s Br. in Supp. of Mot. for Summ. J. at 11.) Such a claim is maintained when the plaintiff proves it has been intentionally treated differently from others similarly situated and there is no rational basis for the different treatment. This claim can be

maintained even though the plaintiff does not identify membership in a protected class of individuals. See Village of Willowbrook v. Olech, 528 U.S. 562, 563 (2000) (citing Sioux City Bridge Co. v. Dakota County, 260 U.S. 441 (1923); Allegheny Pittsburgh Coal Co. v. County Comm'n of Webster County, 488 U.S. 336 (1989)). Plaintiffs, however, never clearly assert they are attempting to make out such a claim in their motion for summary judgment. (See Pl.'s Br. in Supp. of Mot. for Summ. J. at 11.) Nevertheless, the Court will address the claim.

The Supreme Court, in Engquist v. Oregon Dept. of Agric., 553 U.S. 591, 128 S. Ct. 2146, 2157 (2008), held that the class of one equal protection theory does not apply in the public employment context. The Court held that such decisions are often "subjective and individualized, resting on a wide array of factors that are difficult to articulate and quantify." Id. at 2154. The Eleventh Circuit subsequently extended proscription of the doctrine in Douglas Asphalt Co. v. Qore, Inc., 541 F.3d 1269, 1274 (2008), when it held that class of one equal protection claims are also not recognized in the context of a government-independent contractor setting.

In Douglas Asphalt, the plaintiff, a disappointed bidder, sought a government contract to provide paving services for the Georgia Department of Transportation. 541 F.3d at 1271-72. The plaintiff had previously been awarded a contract for the same

services, but had performed poorly. Id. at 1272. When it was not awarded the contract after bidding to perform the work a second time, it sued pursuant to § 1983 in federal court under the class of one equal protection theory. Id. at 1272-73.

The Eleventh Circuit held that the plaintiff had no cognizable equal protection claim. Id. at 1274. In doing so, the court stated "in the absence of a restricting contract or statute, decisions involving government contractors require broad discretion that may rest 'on a wide array of factors that are difficult to articulate and quantify.'" Id. (quoting Engquist, 128 S. Ct at 2154).

Plaintiffs attempt to distinguish Douglas Asphalt by pointing to the City's Materiality Provision and arguing it is a sufficiently restrictive statute. This argument fails. The Douglas Asphalt court rejected the disappointed bidder's claim even though the defendants were constrained by state procurement code. See O.C.G.A. § 32-2-60, et seq. Moreover, both the Georgia Department of Transportation and the City have wide latitude and discretion when operating under their respective governing statutory schemes. The state procurement law applicable to Georgia's Department of Transportation in Douglas Asphalt provides that:

> the department shall award the contract to the lowest reliable bidder, provided that the department shall have the right to reject any and all such bids whether

such right is reserved in the public notice or not and, in such case, the department may readvertise, perform the work itself, or abandon the project.

O.C.G.A § 32-2-69(a) (cited in Douglas Asphalt, 541 F.3d at 1275). Likewise, under the City's code, "[a]n invitation for bids/quotes, a request for proposals, or other solicitation may be canceled, or any or all bids may be rejected in whole or in part as may be specified in the solicitation, when it is for good cause and in the best interest of Augusta-Richmond County." § 1-10-52.

The court's rationale in Douglas Asphalt applies equally in this case. Thus, Plaintiffs' class of one equal protection claim is not cognizable. In any event, as articulated above, the City had a rational basis for its challenged actions. Therefore, to the extent that Plaintiffs urge a class of one equal protection claim, it is rejected under Engquist and Douglas Asphalt. Based on the foregoing, Defendants' motion for summary judgment as to the class of one equal protection claim is **GRANTED**.

### 2. Inadequate Training and/or Supervision

Plaintiffs also contend that their Fourteenth Amendment equal protection rights were violated by the city's alleged inadequate training and/or supervision of its Quality Assurance

Analyst, Phyllis Mills.[14] (Pl.'s Mot. for Summ. J. at 23-26.) Because the related theories of inadequate training and supervision are alleged, the Court, in accordance with Eleventh Circuit precedent, focuses on the common element of both theories—the alleged failure to train. See Kerr v. City of West Palm Beach, 875 F.2d 1546, 1555 (11th Cir. 1989). Other district courts have also used this method. See, e.g, Gainor v. Douglas County, 59 F. Supp. 2d 1259, 1293 n.42 (N.D. Ga. 1998).

Municipalities cannot be held vicariously liable for the actions of its employees under the theory of *respondeat superior*. Monell v. Dep't of Soc. Servs. of New York, 436 U.S. 658, 694-95 (1978). However, a municipality's failure to adequately train its employees can, under certain circumstances, create § 1983 liability directly attributable to the municipality itself. City of Canton v. Harris, 489 U.S. 378, 387-89 (1989). To prove municipal liability based on a failure to train, a plaintiff must establish two elements: (1) that the defendant actually inadequately trained its employees in the lawful execution of their duties, and (2) that the failure was actually defendant's policy. Kerr, 875 F.2d at 1555 (citing City of Canton, 489 U.S. at 389). The second element is only

---

[14] Defendants urge this Court not to consider the allegations related to Mills's training and/or supervision for the same reasons discussed in note five (5), *supra*. As discussed below, the Court is not persuaded by Plaintiffs' allegations of inadequate training and/or supervision, so the issue is moot.

established "where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants [such that the failure to train] can be properly thought of as a city 'policy or custom' that is actionable under § 1983." City of Canton, 489 U.S. at 389; see also Sewell v. Town of Lake Hamilton, 117 F.3d 488, 489-90 (11th Cir. 1997). The Eleventh Circuit has also made clear that, for a failure to train § 1983 claim,

> [i]t is not enough to show that a situation will arise and that taking the wrong course in that situation will result in injuries to citizens . . . . City of Canton also requires a likelihood that the failure to train or supervise will result in the officer making the wrong decision. Where the proper response . . . is obvious to all without training or supervision, then the failure to train or supervise is generally not "so likely" to produce a wrong decision as to support an inference of deliberate indifference by city policymakers to the need to train or supervise.

Town of Lake Hamilton, 117 F.3d at 490 (quoting Walker v. City of New York, 974 F.2d 293, 299-300 (2d Cir. 1992) and adopting its reasoning). Furthermore, the Supreme Court has stated that,

> [i]n resolving the issue of a city's liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program.

City of Canton, 489 U.S. at 390-91.

Plaintiffs' proffered evidence is insufficient to permit a reasonable inference that the City's training program is inadequate. Here, Plaintiffs' evidence in support of its inadequate training claim focuses on one city official—Phyllis Mills.[15] Mills is responsible for, as Quality Assurance Analyst, preparing bid specifications and ensuring that the specifications are in compliance with the Augusta Code. She also is responsible for and deciding whether submissions are compliant.

In attacking the City's training program, Plaintiffs have not focused on the program at all, but have instead focused on hypothetical questions posed to Mills based on the procurement code. In fact, the near totality of Plaintiffs' evidence consists of deposition testimony establishing that Mills cannot, based upon memory alone, correctly answer questions addressing the Augusta Code. (See Mills Dep. at 23-53.) The Court will not infer that Mills has been trained inadequately merely because she cannot answer Plaintiffs' questions without looking at the Code directly.

At one point, Mills was briefly asked about any procurement training she completed within the last year of her deposition.

---

[15] Other City employees deposed in this case briefly testified regarding their training. (See, e.g. Willaims Dep. at 21; Holmes Dep. at 18-19, 26-28.) However, Plaintiffs do not rely on this testimony in their motion for summary judgment. The Court's review of this evidence does not alter its judgment on the failure to train claim.

(Id. at 26-28.) Mills responded by stating that she had attended "IFAS training." (Id. at 27-28.) She also testified that she has undergone IFAS training in the procurement department itself. (Id. at 28.) Plaintiffs' counsel then ceased this line of questioning.

Regarding the training program itself, the Court notes that, under oath, Mills has stated that she has complied with the Augusta Code in her tenure as Quality Assurance Analyst, and that she has had training. (See Mills Aff. ¶¶ 6, 12, Doc. no. 55-2.) Also in the record is the city's comprehensive procurement department purchasing manual handbook. (See Mills Dep. at 23-25, Ex. A.) Mills testified that she has access to the City's handbook, as well as the Procurement Department's standard operating procedures. (Id.)

In short, the evidence Plaintiffs have produced falls far short of what is necessary to establish a genuine issue of fact regarding municipal liability on the basis of a failure to train. Plaintiffs therefore are not entitled to a trial against the City on this basis. Accord Martin v. Anderson, 107 F. Supp. 2d 1342, 1355-57 (M.D. Ala. 1999) (rejecting failure to train claim based on similar evidence).

Although the Court has focused on failure to train, out of an abundance of caution, the Court will also address the theory of failure to supervise. Supervisory liability under § 1983

occurs either when (1) the supervisor personally participates in the alleged constitutional violation or (2) when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation. Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999). The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990) (citations omitted). The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences. Brown, 906 F.2d at 671. In addition, the causal connection may be established and supervisory liability imposed where the supervisor's improper custom or policy results in deliberate indifference to constitutional rights. Hartley, 193 F.3d at 1269 (quotations omitted).

Plaintiffs vaguely raise the issue of inadequate supervision as a theory of liability by referring to Mills's "inadequate training/*and or supervision*." (Pl.'s Br. in Supp. of Mot. for Summ. J. at 26) (emphasis added). Plaintiffs make no direct argument regarding the theory of lack of supervision until their reply to Defendants' response in opposition to Plaintiffs' motion for summary judgment. In the reply,

32

Plaintiffs cite testimony of City Administrator Fred Russell and Augusta-Richmond County Commissioner J.R. Hatney for the proposition that the City has a policy of deliberate indifference towards the Procurement Department. Plaintiffs further allege that the City Administrator and Commission have supervisory authority over the Procurement Department, the department within which Mills works (see Russell Dep. at 18), but, Plaintiffs never directly state who is Mills's supervisor for purposes of their claim.

The Court summarizes the relevant testimony as follows. As City Administrator, Russell has supervisory authority over the Procurement Department's Director, Geri Sams. (Id. at 7-8.) Russell testified that he "does not have a day-to-day role in [the Procurement Department]" and that he interacts with the Procurement Director no more than two or three times a week. (Id. at 8.) He testified that the Augusta-Richmond County Commission also has authority over the Procurement Director. (Id. at 18.)

Plaintiffs claim that, based on Russell's testimony, the City has "no oversight" to confirm whether bidders have supplied the correct number of copies in responding to ITBs, RFQs, and/or RFPs. Russell testified that he is not aware of a process that utilizes a second or third party, in addition to Mills, to check the number of copies submitted by applicants. (See Id. at 21-

22.) Further, Plaintiffs allege that there is no "check and balance" on individual evaluators. According to Plaintiffs, this lack of any check or balance allows evaluators to throw an award of a contract with their individual evaluation. (See Id. at 35-37.) Finally, Plaintiffs note that Commissioner Hatney has admitted that he has not seen the immigration forms, the absence of which disqualified CSRA from RFQ 07-196. (See Hatney Dep. at 37-38.) They also allege he lacks general knowledge of the city's procurement process.

Ultimately, it is unclear upon what basis Plaintiffs offer this line of testimony and argument. If offered against Russell and/or Hatney, the Court notes that neither of these individuals nor any member of the Augusta-Richmond County Commission have been joined as parties to Plaintiffs' suit. Thus, supervisor liability cannot attach to them. If offered against the City in support of an argument that the City has a policy of inadequate supervision of its Procurement Department, the evidence is insufficient to create a reasonable inference of inadequate supervision. Plaintiffs have failed to present evidence of notice to the Administrator and/or Commission of "obvious, flagrant, rampant and [] continued" constitutional deprivations by Mills. See Brown, 906 F.2d at 671. Finally, if Plaintiffs are offering this testimony in support of their claim that the City has an inadequate training program, the testimony's evidentiary

value is insignificant. The testimony does not focus on the training program the City has in place, whatsoever, but rather addresses the Administrator's and/or Commission's role in supervising the Procurement Department. Thus, for reasons discussed above, the evidence is insufficient to support a reasonable inference that the City's training program is inadequate, and Defendants are entitled to summary judgment.

The Court notes that the majority of the cases cited by the parties on this theory of liability deal with the alleged inadequate training and/or supervision by municipalities of their police officers and/or jailers. Amongst the cases cited are those that deal with physical injury as a result of excessive force[16], failure to provide detainees medical treatment[17], failure to prevent a prison beating[18], and in two cases, sexual abuse[19]. Plaintiffs cite no cases that address a municipality's procurement officers and involve plaintiffs alleging economic harm. The Court is unwilling to extend the

---

[16]    City of Oklahoma City v. Tuttle, 471 U.S. 808, 816-17 (1985); Ott v. City of Mobile, 169 F. Supp. 2d 1301, 1311 (S.D. Ala. 2001); Martin v. Anderson, 107 F. Supp. 2d 1342, 1349 (M.D. Ala. 1999); Gainor v. Douglas County, 59 F. Supp 2d 1259, 1286 (N.D. Ga. 1998); Griffin v. City of Clanton, 932 F. Supp 1359, 1370 (M.D. Ala. 1996).

[17]    City of Canton v. Harris, 489 U.S. 378, 381 (1989).

[18]    Hale v. Tallapoosa County, 50 F.3d 1579, 1580-81 (11th Cir. 1995).

[19]    Hartley v. Parnell, 193 F.3d 1263, 1268 (11th Cir. 1999); Sewell v. Town Lake of Hamilton, 117 F.3d 488, 488-89 (11th Cir. 1997).

municipal liability theory of failure to train and/or supervise without substantial justification in this case.

### B. Due Process

Plaintiffs contend in Count II of their Amended Complaint (¶¶ 99-140, doc. no. 37) that they have suffered violations of their right to due process under the Fourteenth Amendment to the United States Constitution, which states that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend XIV, § 1. Plaintiffs allege violations of both substantive and procedural due process rights by the City's alleged arbitrary deprivation of Plaintiffs' property interests in the sought after City contracts.

The relevant law in this area is set forth in recent, previous orders of the Court. See The Alison Group v. Augusta, Case No. 109-cv-105, Order of October 13, 2009, at 4-10 (S.D. Ga.); Bleccs, Inc. v. Augusta, Case No. 109-cv-019, Order of May 22, 2009, at 15-19 (S.D. Ga.). See also Circa Ltd. v. City of Miami, 79 F.3d 1057 (11th Cir. 1996); Flint Elec. Membership Corp. v. Whitworth, 68 F.3d 1309, 1313 (11th Cir. 1995); Pataula Elec. Membership Corp. v. Whitworth, 951 F.2d 1238, 1242 (11th Cir. 1992).

## 1. Substantive Due Process

Plaintiffs claim Defendants' conduct arbitrarily denied Plaintiffs' state-created property rights in the sought after City contracts. However, Eleventh Circuit precedent, binding on this Court, establishes that this circuit does not recognize substantive due process claims stemming from non-legislative deprivations of state-created property rights, such as alleged state-created property rights in governmental contracts. See Flint Elec. Membership Corp., 68 F.3d at 1313; McKinney v. Pate, 20 F.3d 1550 (11th Cir. 1994).

Here, any deprivation of Plaintiffs' property rights, if the property rights exist, stems from non-legislative conduct. In the case *sub judice*, the initial decision as to whether any of the Business Plaintiffs' bids or responses to the ITBs, RFPs, or RFQs at issue here were compliant was made by the Procurement Department. Specifically, the decision was made by the Department's Quality Assurance Analyst, Phyllis Mills. After being deemed compliant, the bidders or responders proceeded through an evaluation process. Various committees were formed that evaluated the numerous bids and responses to RFPs, RFQs, and ITBs at issue. The committees consisted in part of City government officials and officers. Evaluations were made by individual members of the various committees, and final selections for each ITB, RFP, or RFQ were then made by the

committee as a whole. Lastly, in the cases of Plaintiffs Thompson and CSRA, the Augusta-Richmond County Commission gave final approval.

"While the actions of some government officials can easily be categorized as legislative or executive, for others, like county commissioners who act in both a legislative and executive capacity, sorting out which hat they were wearing when they made a decision can be difficult." Lewis v. Brown, 409 F.3d 1271, 1273 (11th Cir. 2005). The Eleventh Circuit, in McKinney, articulated the following legal test to determine whether an act is legislative or non-legislative:

> [e]xecutive acts characteristically apply to a limited number of persons (and often to only one person); executive acts typically arise from the ministerial or administrative activities of members of the executive branch. The most common examples are employment terminations. . . . Legislative acts, on the other hand, generally apply to a larger segment of-if not all of-society; laws and broad-ranging executive regulations are the most common examples.

20 F.3d at 1557 n.9 (citation omitted). As the Court held in The Alison Group, application of the McKinney test here reveals that the City's action was not legislative, but was rather executive or administrative.

The most common example of a non-legislative act is to terminate employment. See McKinney, 20 F.3d at 1557 n.9. The City's decisions here were to procure the employment of service providers. The decisions affected a small number of entities,

namely, the Business Plaintiffs and the successful applicants to the City contracts. The decisions did not apply to society at large. See Lewis, 409 F.3d at 1273 (finding executive action in application of county zoning law because decision affected a limited number of persons, namely, the plaintiff); Flint, 68 F.3d at 1313 n.4 (finding executive action in selection of a bidder for state contract according to state procurement law); Bass v. City of Forsyth, Ga., No. 5:06-cv-278, 2007 WL 4117778, at *3-4 (M.D. Ga. Nov. 16, 2007) (finding city council's vote to apply zoning law was executive action because "crucial distinction" between executive and legislative acts is the impact the government act has on public, and the act did not affect a large segment of society). The selections of Reliable, MC Squared, and Command were executive or administrative acts.

Here too, Plaintiffs' alleged property rights in the sought after City contracts, should they exist, exist only under state law. See Amdahl Corp. v. Ga. Dep't of Admin. Servs., 260 Ga. 690, 695-96 (1990) (concluding disappointed bidder had standing under Georgia law to sue because it suffered injury in fact and asserted an interest arguably within the zone of interests protected by Georgia procurement laws); City of Atlanta v. J.A. Jones Const. Co., 260 Ga. 658, 659 (1990) (holding recovery to a "frustrated bidder" is limited to reasonable bid preparation costs under Georgia law); Hilton Constr. Co. v. Rockdale County

Bd. of Educ., 245 Ga. 533, 538 (1980) (finding disappointed bidder's "general legal interest" provided it standing to sue under Georgia law). Plaintiffs provide no authority establishing that their property interest would arise under anything other than state law.

Therefore, Plaintiffs' substantive due process claims are not cognizable. It follows that Defendants' motion for summary judgment on these claims is **GRANTED**.


### 2. Procedural Due Process

Plaintiffs further argue their procedural due process rights have been violated through the City's application of the Augusta Code, particularly the Bid Protest Provision. (Pl.'s Br. in Supp. of Mot. for Summ. J. at 27-29.) Plaintiffs argue their purported property rights in the City contracts were deprived without adequate procedural due process because the Bid Protest Provision requires that protests by participants in connection with RFPs, RFQs, and ITBs, take place prior to the City's opening of bids in the case of an ITB, or prior to the closing date of proposals in the cases of RFPs and RFQs.

In Flint, the Eleventh Circuit, applying McKinney, ruled that the plaintiffs in that case, disappointed bidders similar to Plaintiffs here, had no federal procedural due process claim under § 1983. 68 F.3d at 1313-14. The court stated that under

Georgia law, when the government frustrates the bidding process, disappointed bidders may bring an action in state court seeking equitable relief and damages. Such recovery is limited to reasonable bid preparation costs. Id.; see Amdahl Corp., 260 Ga. at 695-96; City of Atlanta, 260 Ga. at 659; Hilton Constr. Co., 245 Ga. at 538. Because the State of Georgia provides an adequate avenue for redress of Plaintiffs' claims, Plaintiffs have no federal procedural due process claim under § 1983.

There being no genuine dispute as to the material facts, and Defendants being entitled to judgment as a matter of law regarding the procedural process claims, Defendants' motion for summary judgment on these claims is **GRANTED**.


## V. Declaratory Judgment

Plaintiffs ask the Court to declare the Augusta Code's Bid Protest and Materiality provisions invalid due to their alleged unconstitutionality.[20] Specifically, Plaintiff's claim the Bid Protest provision lacks of a pre-deprivation hearing procedure violative of procedural due process, and the Materiality Provision is unconstitutionally vague. (Compl. ¶¶ 212-26, Doc.

---

[20] Plaintiff AFG, an association, seeks declaratory relief in this action. The Court notes that the Defendants and Plaintiff AFG have disputed the issue of Plaintiff AFG's standing to sue. Specifically, the Defendants and Plaintiff AFG dispute whether Plaintiff AFG possesses associational standing under Hunt v. Washington State Apple Adver. Comm'n, 432 U.S. 333, 343 (1977). The Court need not address this issue because declaratory relief is not warranted.

no. 37.) The Court has previously considered and rejected Plaintiffs' arguments regarding the constitutionality of these code provisions. See Order of May 22, 2009, Bleccs, Inc. v. Augusta, Ga., Case No. 109-cv-019 (S.D. Ga. 2010) (holding there was no likelihood of success on the same constitutional challenges to the Materiality and Bid Protest Provisions as here). In fact, Plaintiffs have expressly abandoned their vagueness claim regarding the Materiality Provision in light of Bleccs. (See Pl.'s Reply to Def.'s Resp. in Opp'n. to Pl.'s Mot. for Summ. J. at 6 n.5.) Further, the Court earlier granted summary judgment in favor of defendants regarding the constitutional challenges in Bleccs.

The Court sees no reason to depart from the rationale relied on in Bleccs in granting Defendants summary judgment on Plaintiffs' constitutional challenges to the Bid Protest and Materiality Provisions. Accordingly, Defendants' motion for summary judgment on this issue is **GRANTED**.

## VI. Qualified Immunity of Defendant Sams

Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Vineyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002)

(quotation omitted). When a plaintiff asserts no federal constitutional violation at all, the affirmative defense of qualified immunity applies to a defendant with an ability to assert the defense. See Flint, 68 F.3d at 1314 ("[T]he Supreme Court observed that a 'necessary concomitant' to the decision of whether a defendant is entitled to qualified immunity, 'is the determination of whether the plaintiff has asserted a violation of a constitutional right at all.'") (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991)).

The Court has concluded herein that Defendants have not deprived Plaintiffs of their federal constitutional rights of equal protection and due process, and that Plaintiffs are not entitled to a declaration that the Bid Protest and Materiality Provisions are unconstitutional. Because Plaintiffs have demonstrated no constitutional violation here, the defense of qualified immunity applies to Defendant Sams and the Court **GRANTS** summary judgment in Defendant Sams's favor.

## VII. Supplemental State Law Claims

Plaintiffs have not succeeded on any of their alleged federal claims. Therefore, the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims in counts three (3) and four (4) of the complaint (¶¶ 141-211, doc. no. 37). See 28 U.S.C § 1367(c)(3).

## VIII. Conclusion

Upon the foregoing, Plaintiffs' motion for summary judgment (doc. no. 133) is **DENIED**, and Defendants' motion for summary judgment (doc. no. 134) is **GRANTED**. All other pending motions are **MOOT** and shall be **TERMINATED**. The clerk shall enter **FINAL JUDGMENT** in Defendants' favor, and is further **DIRECTED** to **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this ___31ST___ day of March, 2010.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA